# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 575 | **DATE** | 8/27/2003 |
| **CASE TITLE** | Shales vs. Gen. Chauffeurs Salesdrivers et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons in the attached memorandum opinion and order, plaintiff's motion requesting additional equitable relief [128-1], application for attorney fees [129-1] and application for case cost reimbursement [129-2] are granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 8 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/27/2003 date mailed notice | |
| KF | courtroom deputy's initials | 03 AUG 27 AM 10:51 Date/time received in central Clerk's Office | KF mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JAMES D. SHALES,

    Plaintiff,

v.

GENERAL CHAUFFEURS,
SALESDRIVERS AND HELPERS
LOCAL UNION NO. 330, et al.,

    Defendants.

No. 00 C 575

Mag. Judge Michael T. Mason

AUG 2 8 2003

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

This case was brought by James D. Shales against defendants General Chauffeurs, Salesdrivers and Helpers Local Union No. 330 (hereinafter, "Local 330" or the "union"), Jim Butt, Joseph Degand, Tyler Lanning and the estate of Francis "Mike" Hruby alleging the violation of a number of plaintiff's union rights guaranteed under the Labor-Management Reporting and Disclosure Act of 1959, as amended (hereinafter, "LMRDA"); these include, 1) generating a pattern of intimidation with the intent to suppress dissent against the above union officials by terminating plaintiff from his position as Business Agent; 2) suspending him twice from union membership; 3) invalidating a leave-of-absence agreement guaranteeing his seniority rights with Meyer Material Company ("Meyer"), formerly Brady Ready Mix Co., ("Brady"); and 4) ultimately expelling him from union membership, in the process violating his due process rights, his rights of free speech and assembly, his equal rights and privileges to participate in the affairs of the Union, and both the Local 330 bylaws and the IBT Constitution.

With respect to these allegations the jury delivered a general verdict in favor of the plaintiff awarding him $171,500.00 in compensatory damages and $250,000.00 in punitive damages. He now requests that the Court provide additional equitable relief by (a) reinstating him as a union member in good standing, (b) reinstating him to his position and his previous salary as Business Agent for Local 330; (c) awarding backpay and benefits related to his job working for Meyer, and frontpay related to his loss of his position as Business Agent; (d) awarding prejudgment interest; (e) restoring of his seniority rights with Meyer pursuant to the leave of absence waiver; and (f) awarding attorneys' fees.[1]

29 U.S.C. § 412 provides that the district court may award "such relief (including injunctions)" as may be appropriate for violations of LMRDA guidelines codified in 29 U.S.C. §§ 411 and 529. As we are simultaneously issuing a companion order upholding the general jury verdict that the defendants are guilty of violating a number of plaintiff's most basic LMRDA rights in §§ 411 and 529, we find that some equitable relief is appropriate.

## I. Union Membership

Because the jury found that Local 330 unjustly suspended and expelled plaintiff from union membership, we hereby order that plaintiff be reinstated into Local 330 union membership and his status be held in good standing retroactive to the first day of his suspensions and expulsion from union membership. As we explained in our companion

---

[1] We are simultaneously issuing an opinion denying defendant's motion for judgment in their favor, or in the alternative, a new trial. That opinion contains a comprehensive overview of the facts and claims in this case.

order regarding defendants' motion for judgment notwithstanding the verdict, we find that the suspensions did prejudice the plaintiff and interfere with his rights; thus we order that his status with the union be reestablished in good standing as if the suspensions had not occurred.

## II. Reinstatement as Business Agent

In 1990, after being appointed Business Agent of Local 330, plaintiff left his position at Meyer; he relied on a leave of absence agreement with Meyer guaranteeing him no loss of past seniority rights if he returned when he was no longer working for the union.[2] On August 7, 1997, shortly after plaintiff had announced his intention to run for union president, defendants fired plaintiff from his position as Business Agent. On or about March 30, 1998, plaintiff returned to his job at Meyer. Meyer at first refused to honor the leave of absence agreement, and the union subsequently filed charges against plaintiff, alleging that he had forged such agreement. In February, 2001, plaintiff and Meyer entered into a settlement agreement regarding his return to work at Meyer, which held that it would restore plaintiff's full seniority rights if plaintiff's claims that Meyer violated his rights under the collective bargaining agreement were validated either in a court proceeding or through a settlement with the union. The jury subsequently found for plaintiff that defendants wrongfully denied plaintiff his rights under the agreement and interfered with his due process rights by denying him the opportunity to prepare a defense to the charge. The jury also heard evidence that former Local 330 president Smith had destroyed the leave of absence agreement

---

[2] Plaintiff was elected Recording Secretary of Local 330 in 1997.

before wrongfully accusing Shales of forging it.

Even though the jury found that the defendants violated plaintiff's rights under the LMRDA by firing him from his position as Business Agent and improperly expelling him from membership and his position as Recording Secretary, we find that to award plaintiff injunctive relief to become the current acting Business Agent and/or Recording Secretary for the Local 330 would be both unmerited and would make him more than whole. Because of his candidacy for president, plaintiff could not have simultaneously been reelected as Recording Secretary for the subsequent term of office beginning January 21, 1998 even if defendants had not fired him, and therefore could not have been reappointed the Local 330 Business Agent either. Consequently, the actions of the defendants had a quantifiable effect of removing plaintiff from the Business Agent position for a period of five months (from August, 1997 to January, 1998, when his term of office would have expired); they did not, however, prevent plaintiff from running for the position of Recording Secretary for the following term. We cannot grant injunctive relief to the plaintiff for a union position he could never have held.

Furthermore, in accordance with the Settlement Agreement and General Waiver and Release between plaintiff and Meyer, the jury verdict should have already restored plaintiff's seniority rights. Consequently, plaintiff has been made whole with respect to his employment with Meyer, having been returned to the position he was in when he originally left the company. In conclusion, we find it inappropriate to fire the current appointed Business Agent and Recording Secretary whose appointment and election is unassociated with this litigation. However, to the extent it has not already done so, we order Meyer to give full effect to the February, 2001 settlement agreement.

4

## III. Back pay and Benefits and Front pay

Plaintiff's loss of benefits with respect to his loss of seniority at Meyer have already been addressed and compensated for pursuant to the settlement agreement.

However, the appropriateness of back pay and benefits and front pay for the eight months plaintiff was unemployed, after being fired from the Business Agent position and before being rehired at Meyer, has not been addressed. Plaintiff knew on December 6, 1997 that he had lost the election for president and thus would not continue his employment with the union; he immediately appealed the election and three months later, during the pendency of his appeal, notified Meyer that he wished to return to work. We find that it is inappropriate to order front pay for the time between the end of plaintiff's natural term of office as Recording Secretary/Business Agent and his return to Meyer because the election for president was an intervening event that would have ended plaintiff's employment as Recording Secretary and Business Agent, regardless of whether he won or lost the election for president.

And to the extent that Shales argues that, but for the wrongful actions of the defendants, he may have won the election for president, we find that the jury's award of compensatory damages fully covers this possibility. Shales was out of work for approximately eight months in 1997 and early 1998; he requested compensatory damages starting from the date of his termination as Business Agent up to the date of trial in June, 2003, even though he was employed by Meyer for a majority of this time. The jury awarded him nearly 55% of the compensatory damages he requested, an amount that more than covers the time Shales was out of work, and also allows for the

5

possibility that he might have been elected president.[3]

For the same reason, we find that the jury's award fully compensates Shales for any back pay he might be due for the time between the natural end of his term in office after he lost the election for president and his start with Meyer. Shales lost the election in December, 1997 and immediately appealed the results. About three months later, while his appeal was still pending, he returned to work at Meyer. Thus, we find that the jury's award is more than adequate to compensate him for the time he was out of work.

## IV. Prejudgment Interest

This court has the discretionary power to award prejudgment interest for violations of federal law. Gorenstein Enterprises, Inc. v. Quality Care-USA, 874 F.2d 431, 436 (7th Cir. 1989). The discretion rests on whether the award will both "make the plaintiff whole and discourage delay by the defendant in making reparations." McRoberts Software, Inc. v. Media 100, Inc. 329 F.3d 557, 572-73 (7th Cir. 2003). We therefore find it necessary to award prejudgment interest to the plaintiff on all compensatory damages awarded by the jury, to both make plaintiff whole and discourage delay by the defendant in making reparations.

## V. Attorneys' Fees

Attorneys' fees are not specifically authorized under Title I of the LMRDA. However, the Supreme Court has held that under certain circumstances attorneys' fees may be awarded. Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

---

[3] As we explain in our companion order issued today regarding defendant's request for a reduction in the award, or in the alternative, a new trial, we find that the jury's compensatory damages award can properly be seen to cover both back pay owed to Shales as well as damages for loss of reputation.

6

The Court in *Hall* stated that a trial court may award attorneys' fees at its discretion when, 1) defendants have acted in bad faith, or 2) the case conferred substantial benefit to the union and its members. *Id.* at 5.

The Court in *Hall* explains that, in the bad faith category, attorneys' fees may be awarded "to a successful party when his opponent has acted in `bad faith, vexatiously, wantonly or for oppressive reasons.'" *Id.* (Quoting 6 J. Moore, Federal Practice 54.77(2), p. 1709 (2d ed. 1972)). Furthermore, when punitive damages are awarded on the basis of the defendant's willful or reckless disregard of the plaintiff's interests, a court may find it necessary to award attorneys' fees as further punitive deterrence for the actions of the defendants. *Kinslow v. American Postal Workers Union, Chicago Local*, 222 F.3d 269, 278-80 (7th Cir. 2000). In this case, the jury found that the officers of the Local Union 330 violated a number of plaintiff's rights under the LMRDA by destroying key documents, perjuring themselves during union hearings, and generally abusing union remedies in a tyrannical manner that are in contrast set forth in the LMRDA to uphold union democracy. They focused their efforts on the plaintiff, wrongfully suspending him twice and eventually expelling him from union membership. In summary, a plethora of evidence exists demonstrating the bad faith of the defendants' actions. These grounds are sufficient to award the plaintiff attorneys' fees.

However, this court finds further incentive to award plaintiff attorneys' fees under the common benefit doctrine. Under the common benefit doctrine, the plaintiff is entitled to attorneys' fees if it is believed his litigation has protected other union members by deterring possible future conduct that would be similarly unjust and oppressive. The Court in *Hall* illustrates the impact of such litigation.

7

> There can be no doubt that, by vindicating his own right of free speech guaranteed by § 101(a)(2) of Title I of the LMRDA, respondent necessarily rendered a substantial service to his union as an institution and to all of its members. When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the "chill" cast upon the rights of others. Indeed to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial "not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs."

Hall, 412 U.S. at 8, 93 S.Ct. 1943 (quoting Yablonski v. United Mine Workers of Am., 466 F.2d 424, 431 (1972)). In this case, plaintiff was protecting his freedom of speech along with many of the most basic union rights guaranteed by the LMRDA to maintain union democracy. Plaintiff, thus, undoubtedly conferred a substantial benefit on all Local 330 members, especially considering that many of the defendants still hold elected positions in the Local 330. We therefore find it appropriate to award the plaintiff attorneys' fees, both to penalize the defendants for their bad faith actions and to compensate plaintiff for conferring a common benefit upon all Local 330 members.

## VI. Attorneys' Fees Adjustment

Plaintiff's attorney requested $425/hour for court time and $350/hour for office and travel time. Defendants' attorney argued that the rates should be reduced to $275/hour and $210.5/hour respectively. Given the amount of work performed by plaintiff's attorney, we find that the reasonable attorneys' fees should be $400 and $320 respectively for court time and non-court time. We agree with defendants that the 3.5 hours expended on December 10, 2002 and January 16, 2003 for filing and copying should be excluded, but we do include all costs associated with preparing for and attending the trial, including $616 for witnesses' food costs.

## VII. Conclusion

Plaintiff's motion for equitable relief is granted with respect to reinstating plaintiff as a union member in good standing, enforcing his settlement agreement with Meyer, prejudgment interest and attorneys' fees as modified above. Equitable relief is denied with respect to plaintiff's request that we reinstate him to his previous position and salary as Business Agent for Local 330, as well as for back pay and front pay. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: August 27, 2003